**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BLOCKWARE SOLUTIONS LLC,<br><br>　　　　　*Plaintiff*<br><br>v.<br><br>AMERICAN MINING WAREHOUSE LLC,<br>and TYLER DEBOER<br><br><br>　　　　　*Defendants* | CIVIL ACTION NO.<br>_____<br><br>**COMPLAINT FOR MONEY DAMAGES**<br>**AND DEMAND FOR JURY TRIAL** |

Plaintiff Blockware Solutions, LLC ("Plaintiff" or "Blockware"), by and through its undersigned counsel, brings this action against American Mining Warehouse, LLC ("AMW") and Tyler Deboer ("Deboer" and collectively with AMW "Defendants"), and alleges as follows:

### NATURE OF THE ACTION

1. This case arises out of a series of contracts breached by Defendants who failed to deliver Bitcoin Mining equipment by the delivery date specified in the contracts.

2. As a direct consequence of Defendants' wrongful conduct and breach of contract, Blockware has sustained monetary and other damages, including, but not limited to, lost sales, loss of profits, loss of future profits, loss of customers and damages to its business reputation and good will.

3. As a consequence of Defendants' failure or refusal to fulfill all orders placed by Blockware and to supply the Bitcoin mining equipment required under the terms of the purchase agreements, Blockware has been unable to fulfill the orders by its own customers for Bitcoin mining equipment and has been forced to incur additional

expenses in an effort to identify alternative suppliers and obtain substitute inventory of the products previously ordered from AMW.

4.     As a result of AMW's breach of contract, Blockware has sustained general, special, consequential, and incidental damages in an amount estimated to exceed $10,179,408. Accordingly, Blockware seeks monetary damages in an amount to be proven at trial and now estimated to exceed $10,179,408.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction to hear this action pursuant to Title 28, United States Code, Section 1332, as there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.     There is complete diversity because Plaintiff Blockware Solutions, LLC is a citizen of New York and Florida for purposes of diversity jurisdiction and the Defendants AMW and Deboer are both citizens of Texas for the purposes of diversity jurisdiction.

7.     Accordingly, there is complete diversity among the plaintiff and defendants.

8.     Venue is appropriate in this district pursuant to Title 28, United States Code, Section 1391, because a substantial part of the events or omissions giving rise to the claims occurred in this district.

9.     This Court has personal jurisdiction over the defendants pursuant to Federal Rule of Civil Procedure 4(k) and New York Civil Practice Laws & Rules Section 302(a)(1) because they transacted business in New York by contracting to supply cryptocurrency miners in the state. This Court also has personal jurisdiction over the

2

defendants pursuant to Federal Rule of Civil Procedure 4(k) and New York Civil Practice Laws & Rules Section 302(a)(3) because they fraudulently induced Blockware to enter the purchase agreements, which caused Blockware to suffer damages in New York.

## DEMAND FOR JURY

10.    Plaintiff hereby demands a jury trial.

## THE PARTIES

11.    Plaintiff Blockware Solutions, LLC is a limited liability company organized under the laws of the state of Delaware. It's citizenship, for diversity purposes, is determined by the citizenship of its members.  The two members of Blockware Solutions are citizens of the state of New York and the state of Florida.

12.    Defendant American Mining Warehouse, LLC is a limited liability company existing under the laws of the State of Texas with its headquarters and principal place of business in Woodlands, Texas.  It's citizenship, for diversity purposes, is determined by the citizenship of its members.  Tyler Deboer is the sole managing member of American Mining and is a citizen of the state of Texas.

13.    Upon information and belief, Tyler Deboer is the sole member of American Mining Warehouse.

14.    Defendant Tyler Deboer is a natural person and is domiciled and a citizen of the state of Texas.

15.    American Mining Warehouse purports to distribute and sell bitcoin mining computer equipment to the public. Upon information and belief, defendant American Mining Warehouse regularly transacts business within the State of New York and

contracts to supply goods, including products that are the subject of this case, in the State of New York.

16.    Upon information and belief, Tyler Deboer through American Mining Warehouse purports to distribute and sell bitcoin mining computer equipment to the public. Upon information and belief, Tyler Deboer through American Mining Warehouse regularly transacts business within the State of New York and contracts to supply goods, including products that are the subject of this case, in the State of New York.

17.    Upon information and belief, Tyler Deboer comingles his personal finances with his business entity, using the same for his own personal use and benefit.

18.    Upon information and belief, Tyler Deboer regularly transfers money and property out of his business entity, American Mining Warehouse, rendering it insolvent and undercapitalized.

19.    Upon information and belief, Tyler Deboer completely dominates and controls American Mining Warehouse and uses it to defraud his customers and hinder creditors, such as the plaintiff herein.

20.    Upon information and belief Tyler Deboer regularly fails to observe business formalities regarding his management and operation of AMW.

21.    Upon information and belief, Tyler Deboer has used AMW as a vehicle to commit fraudulent and other wrongful acts against plaintiff and other members of the public.

22.    As such AMW is the alter ego of Tyler Deboer and he is personally liable for AMW's debt herein under a veil piercing or alter ego theory.

## FACTUAL ALLEGATIONS

### *Negotiations and False Misrepresentations*

23.     This is a breach of contract action wherein Plaintiff paid for, but Defendants failed to deliver bitcoin mining equipment in accordance with the terms of the agreement, under five separate contracts.

24.     By way of background, bitcoin mining is the process of creating new bitcoin using computing systems that compete to solve mathematical problems. This process also verifies and validates the information regarding the bitcoin transactions on the bitcoin network and by doing so prevents double-spending. "Mining" of bitcoins is accomplished using energy-intensive, powerful computers and sophisticated equipment located in data centers to solve complex cryptographic hash puzzles to verify transactions that are then updated on the decentralized blockchain ledger. In return for solving these puzzles, verified miners are rewarded with newly minted bitcoin (subject to a fixed cap on total bitcoins that may be minted), but they also receive fees from any transaction contained in each block of transactions (which fees, in turn, ensure that miners have the incentive to mine and validate bitcoin transactions and keep the network going).

25.     With each passing week the complex cryptographic hash puzzles grow more and more complex, requiring more and more computing power, and there are fewer and fewer Bitcoins remaining to be mined.

26.     Bitcoin mining is big business. According to CoinMarketCap, the value of all the bitcoins in the world was over $1.44 trillion as of March 13, 2024. While the value of bitcoins fluctuates, a single bitcoin was worth $73,079.37 on March 13, 2024. Thousands of companies accept bitcoin as payment and a growing number of Wall Street

firms (including J.P Morgan, Morgan Stanley and others) are expanding their footprint in the cryptocurrency sector.

27.    It is usual and customary practice for cryptocurrency mining companies to run their miners on a full-time basis (24 hours per day, 365 or 366 days per year). When miners are not running they are not making money for cryptocurrency mining companies.

28.    Blockware entered five contracts at issue with AMW for the delivery of bitcoin mining equipment.  The contracts were negotiated by Blockware's CEO, Mason Jappa from his office in New York city and by AMW's CEO Tyler Deboer. Jappa was also the main point of contact for most communications with AMW regarding the five contracts. Deboer was Blockware's main point of contact regarding all of the contracts and deliveries.

29.    The timing for delivery of the bitcoin mining equipment was very important to Blockware because any delays would cost Blockware a significant amount in lost profits since the miners could not be up and running and Blockware could not receive hosting revenues for those miners and lost business because Blockware's clients expected delivery dates to be met so that they did not experience lost profits.

30.    In order to induce Blockware to enter into the various purchase agreements with AMW, Deboer and AMW falsely represented that they would deliver the cryptocurrency mining units by the dates set forth in the contracts. Upon information and belief, these representations were false when made.

31.    These representations were material because Blockware had contractual obligations to its clients to deliver bitcoin mining equipment by promised deadlines and because every day the bitcoin miners were not up and running represented lost profits for

Blockware. Blockware would never have proceeded with the orders with AMW if it did not have the ability to deliver by the contracted deadlines.

32.    Absent these representations and assurances, Blockware would not have entered into the Purchase Agreements or paid the purchase prices required by the Purchase Agreements.

### *The Purchase Agreements*

33.    This is a breach of contract action wherein Plaintiff paid for, but Defendants failed to deliver goods in accordance with the terms of the agreement, under five separate contracts.

34.    On November 15, 2023, Blockware entered into a Purchase Agreement with AMW (the "November 15 Purchase Agreement" attached hereto as **Exhibit 1**) for the purchase of 552 new Bitmain S19KPro 120TH miners (the "November 15 Units") for a purchase price of $828,662.40.

35.    Mason Jappa, CEO of Blockware, negotiated and signed the November 15 Purchase Agreement from New York state.

36.    Tyler Deboer negotiated and signed the November 15 Purchase Agreement for AMW.

37.    On November 15, 2023, Blockware made a payment to AMW of $828,662.40 by wiring $828,662.40 to an Interest on Lawyers Trust Account maintained by AMW's counsel, Whitley LLP Attorneys at Law.

38.    Blockware has fully performed its obligations under the November 15 Purchase Agreement.

39.     The November 15 Units were to be used to earn profits by mining Bitcoins.

40.     Under the November 15 Purchase Agreement, the November 15 Units were to be delivered between November 29 and December 4, 2023.

41.     The November 15 Units were not delivered by December 4, 2023.

42.     The November 15 Purchase Agreement specifically stated that "[t]he buyer's order will be processed and prepared for shipping once payment is made by buyer. The units will be delivered within 14-19 days of that payment. The units will be delivered to the buyers requested location in NY (check local delivery constraints for situations like "one day a week dispatch, etc") Shipping is included in the purchase price. American Mining Warehouse will handle the shipping of buyer's order to the buyer's designated location."

43.     On December 22, 2023, twenty days after the delivery date outlined in the November 15 Purchase Agreement, the November 15 Units were delivered to the location Blockware requested in New York state.

44.     On December 15, 2023, Blockware entered into a second Purchase Agreement with AMW for the purchase of 750 new Bitmain S21 200TH units for a purchase price of $2,523,000. Mason Jappa, CEO of Blockware, negotiated and signed the purchase agreement from New York state and Tyler Deboer negotiated and signed the purchase agreement for AMW.

45.     On December 15, 2023, Blockware made a payment to AMW of $2,523,000 by wiring $2,523,000 to a trust account maintained by AMW's counsel, Whitley LLP Attorneys at Law.

46.    On December 18, 2023, Blockware and AMW amended the purchase agreement to add 100 additional new Bitmain S21 200TH units to the agreement. The updated purchase agreement was for the purchase of 850 new Bitmain S21 200TH units (the "December 18 Units") for the purchase price of $2,859,400 (the "December 18 Purchase Agreement" attached hereto as **Exhibit 2**).

47.    Mason Jappa, CEO of Blockware, negotiated and signed the December 18 Purchase Agreement from New York state.

48.    Tyler Deboer negotiated and signed the December 18 Purchase Agreement for AMW.

49.    Blockware paid the additional $336,400 on December 28, 2023 by wiring $336,400 to an interest on lawyers trust account maintained by AMW's counsel, Whitley LLP Attorneys at Law.

50.    Blockware has fully performed its obligations under the December 18 Purchase Agreement.

51.    The December 18 Units were to be used to earn profits by mining Bitcoins.

52.    Pursuant to the December 18 Purchase Agreement, "[t]he buyer's order will be available for delivery in approximately 4-9 days from date of confirmation by Bitmain that the buyer's reserved January order batch is ready to process and ship (Expected 2H January 2024), to the buyers requested location in the lower 48 state."

53.    Bitmain informed Blockware that most of their January batches for new Bitmain S21 200TH units shipped the first two weeks of January.

54.    Upon information and belief, Bitmain's January order batches were ready to process and ship by February 1, 2024.

55.    None of the December 18 Units were processed or shipped by February 1, 2024.

56.    One hundred and three S21 200TH Units were delivered to Blockware on February 21, 2024.

57.    AMW and Deboer have not delivered the remaining seven hundred and forty-seven of the December 18 Units.

58.    On December 21, 2023, Blockware entered into a third purchase agreement with AMW (the "December 21 Purchase Agreement" attached hereto as **Exhibit 3**) for the purchase of 1,610 new Bitmain S19K 120TH units and 690 new Bitmain S19K 115TH units (the "December 21 Units") for a purchase price of $3,311,482.50.

59.    Mason Jappa, CEO of Blockware, negotiated and signed the November 15 Purchase Agreement from New York state.

60.    Tyler Deboer negotiated and signed the November 15 Purchase Agreement on behalf of AMW.

61.    On December 22, 2023, Blockware made a payment to AMW of $3,311,482.50 by wiring $3,311,482.50 to an interest on lawyers trust account maintained by AMW's counsel, Whitley LLP Attorneys at Law.

62.    Blockware has fully performed its obligations under the December 21 Purchase Agreement.

63.     The December 21 Units were to be used to earn profits by mining Bitcoins.

64.     Under the December 21 Purchase Agreement, the December 21 Units were to be delivered by January 30, 2024.

65.     The December 21 Purchase Agreement specifically stated that "[t]he buyer's order will be available for delivery in approximately 39 days from date of receipt of payment and confirmation by AMW to Bitmain – to the buyers requested location in the lower 48 state. American Mining Warehouse will handle the shipping of buyer's order to the buyer's designated location."

66.     Between February 7, 2024 and February 20, 2024, one thousand seven hundred of the December 21 Units were delivered, two to three weeks after the delivery date outlined in the December 21 Purchase Agreement.

67.     To date, Blockware has not received six hundred of the December 21 Units.

68.     On December 30, 2023, Blockware entered a fourth purchase agreement with AMW (the "December 30 Purchase Agreement" attached hereto as **Exhibit 4**) for the purchase of 320 new McroBT Whatminer M50 Series units (the "December 30 Units") for a purchase price of $972,876.94.

69.     The December 30 Purchase Agreement was negotiated and signed by Tyler Deboer on behalf of AMW.

70.     The December 30 Purchase Agreement was negotiated by Mason Jappa, CEO of Blockware from New York state. The December 30 Purchase Agreement was signed by Daniel Coudou, Chief Revenue Officer of Blockware.

71.    On January 2, 2024, Blockware made a payment to AMW of $972,876.94 by wiring $972,876.94 to an interest on lawyers trust account maintained by AMW's counsel, Whitley LLP Attorneys at Law.

72.    Blockware has fully performed its obligations under the December 30 Purchase Agreement.

73.    The December 30 Units were to be used to earn profits by mining Bitcoins.

74.    Under the December 30 Purchase Agreement, the December 30 Units were to be delivered by January 11, 2024.

75.    The December 30 Purchase Agreement specifically states that "[t]he buyer's order will be available for delivery in approximately 4-9 days from date of receipt of payment and confirmation by AMW to Whatsminer – to the buyers requested location in the lower 48 state. American Mining Warehouse will handle the shipping of buyer's order to the buyer's designated location."

76.    The December 30 Units were not delivered on or before January 11, 2024.

77.    The December 30 Units were delivered between January 16, 2024 and February 2, 2024, in some cases over 3 weeks after the delivery date outlined in the December 30 Purchase Agreement.

78.    On January 8, 2024, Blockware entered into a fifth purchase agreement with AMW (the "January 8 Purchase Agreement" attached hereto as **Exhibit 5**) for the purchase of four hundred and fifty new Bitmain S19K 50/50 mixed TH (115 & 120) units (the "January 8 Units") for a purchase price of $656,178.75.

79.     The January 8 Purchase Agreement was negotiated and signed by Tyler Deboer on behalf of AMW.

80.     The December 30 Purchase Agreement was negotiated and signed by Mason Jappa, CEO of Blockware, from New York state.

81.     On January 8, 2024, Blockware made a payment to AMW of $656,178.75 by wiring $656,178.75 to an interest on lawyers trust account maintained by AMW's counsel, Whitley LLP Attorneys at Law.

82.     Blockware has fully performed its obligations under the January 8 Purchase Agreement.

83.     The January 8 Units were to be used to earn profits by mining Bitcoins.

84.     Under the January 8 Purchase Agreement, the January 8 Units were to be delivered by February 22, 2024.

85.     The January 8 Purchase Agreement specifically states that "[t]he buyer's order will be available for delivery in approximately 39-45 days from date of receipt of payment and confirmation by AMW to Bitmain – the buyers requested location in the lower 48 states. American Mining Warehouse will handle the shipping of buyer's order to the buyer's designated location."

86.     The January 8 Units were not delivered on or before February 22, 2024.

87.     On February 27, 2024, eighty-five of the January 8 Units were delivered, almost a week after the delivery date outlined in the January 8 Purchase Agreement.

88.     To date, Blockware has not received three hundred sixty-five of the January 8 Units.

*Repeated Delays*

89.    Blockware repeatedly requested information from Deboer and AMW regarding the delivery status of the November 15 Units, the December 18 Units, the December 21 Units, the December 30 Units and the January 8 Units (collectively the "Bitcoin Mining Units"), including the serial numbers, order numbers, and shipping date.

90.    The Bitcoin Mining Units were to be used by Blockware and Blockware's clients to earn profits by mining Bitcoins.

91.    Blockware repeatedly informed Deboer and AMW of the importance of receiving the Bitcoin Mining Units by the contractual deadlines.

92.    Deboer and AMW did not deliver any of the Bitcoin Mining Units by the contractual deadlines.

93.    Deboer and AMW repeatedly gave Blockware new timelines for the delivery of the Bitcoin Mining Units. Deboer and AMW repeatedly failed to deliver the Bitcoin Mining Units within the promised timelines.

94.    Blockware repeatedly informed Deboer and AMW of the importance of hitting the timelines promised.

95.    Blockware repeatedly informed Deboer and AMW of the importance of the December 21 Units being delivered on time and the impact missing the delivery deadlines would have on Blockware's business.

96.    Blockware informed Deboer and AMW that Blockware's clients were not happy about the delayed shipments and the lack of updates as to the expected delivery dates for the Bitcoin Mining Units.

97.    From December through March, Blockware continued to seek updates regarding the status of the Bitcoin Mining Units, but Deboer and AMW became increasingly non-responsive, in spite of the promises Deboer and AMW made prior to Blockware's executing the Purchase Agreements.

98.    When communications did occur, Blockware pressed for specifics regarding the status of the orders and exact delivery dates but Deboer and AMW were unwilling to provide specifics.

99.    Blockware became increasingly frustrated with Deboer and AMW's failure to deliver the Bitcoin Mining Units or any proof that they were moving forward to meet their obligations.

100.    On or around January 23, 2024, Blockware requested information regarding the December 18 Units and the delivery of the units. Blockware's CEO, Mason Jappa reminded Deboer that the units were "supposed to ship now".

101.    On or around January 24, 2024, Blockware followed up on their request, asking Deboer if he had any information on the order. Deboer responded stating that the units were "running slower at 17-20 days behind" and the units would "ship in 2-3 batches."

102.    Deboer informed Blockware that the December 18 Units would be delivered by February 4, 2024.

103.    None of the December 18 Units were delivered by February 4, 2024.

104.    On February 2, 2024, Blockware requested an update on the December 18 Units. Deboer stated that they would receive information about the shipping and delivery of the orders on or around February 15, 2024.

105.    Blockware requested that Deboer confirm that the delivery of the December 18 Units would not be impacted by the Chinese New Year. Deboer repeatedly confirmed that it would not be impacted.

106.    On or around January 22, 2024, Blockware requested information regarding the December 21 Units (including the serial numbers and order numbers) and attempted to coordinate delivery of the 2300 miners which were supposed to ship that week. Deboer stated that he would relay that information as soon as he received it.

107.    On or around January 23, 2024, Blockware's CEO, Mason Jappa, followed up again with Deboer.  Mr. Jappa informed Deboer that Blockware's clients were not happy about the delay and needed a tangible update today. He once again requested that Deboer send serial numbers, order number and confirmation that the December 21 Units were shipping that week.

108.    AMW and Deboer did not provide the requested information. Instead, Deboer stated that orders were running behind and told Blockware to "taper their [client's] expectations".

109.    Blockware informed Deboer that "[o]ur industry is very sensitive given the fact that these machines make money daily and if you give a timeline they expect you adhere".

110.    On or around January 24, 2024, Blockware followed up on their request, asking Deboer if he had any information on the December 21 Units. Deboer responded stating that the units were "running est 12-14 days behind" and the units would "ship in two batches."

111.    Jappa responded informing Deboer that "Bitmain told me all December batch S19k pro shipped".

112.    Jappa also informed Deboer that the December 21 Units were the most important to Blockware and requested that he "hit the timeline that was promised." He specifically asked that "[i]f we have any string with Bitmain, we need that one shipped, along with the S/N, order number, etc shared asap".

113.    On January 25, 2024, Blockware followed up with Deboer and AMW regarding the status of the delivery of the December 21 Units. Deboer and AMW did not have any further update to provide.

114.    Blockware informed Deboer and AMW that it really needed a concrete timeline because this was an order for a multi-billion dollar client that was expecting delivery the next week.  Blockware also informed Deboer and AMW that this was the client's first order with Blockware and was a very sensitive situation for Blockware. Blockware requested Deboer get exact clarity on the status of Blockware's orders that night. Blockware informed Deboer that is was concerned that delays due to Chinese New Year would further impact the timeliness of its orders if they were not shipped out right away.

115.    On January 26, 2024, Mr. Jappa asked Deboer if they could chat that morning. Deboer responded that he was waiting for answers as to if he could get Blockware serial numbers sooner than the 14 day delay and get shipping expedited. He stated he would message Mr. Jappa when he got the word and then they could get on the call.

116.    AMW and Deboer continued to provide non-specific updates on the status of the orders and continued to fail to deliver the outstanding Bitcoin Mining Units.

117.    On March 15, 2024, counsel for Blockware sent a demand letter to AMW requesting that they immediately deliver all outstanding Bitcoin Mining Units. No additional Bitcoin Mining Units were delivered.

118.    Upon information and belief, Deboer deleted the Telegram Messenger communications between Deboer and Jappa so that Jappa no longer has access to their previous communications about the Purchase Agreements.

119.    Upon information and belief, Deboer has been discussing ceasing AMW's operations.

120.    Upon information and belief, AMW no longer has an active website and AMW's previous ecommerce website, americanminingwarehouse.com, now redirects to a page asking the store owner to contact Shopify support to reactivate their store.

121.    On March 23, 2024, counsel for Blockware sent an email to counsel for AMW and Deboer requesting an update on the status of the Bitcoin Mining Units and answers to questions concerning the orders.

122.    Blockware did not receive a response to their questions.

123.    On March 29, 2024, counsel for Blockware sent a final demand letter to AMW demanding that all outstanding Bitcoin Mining Units shipment tracking numbers be provided by no later than 5:00 P.M. EST on Tuesday, April 2, 2024.  No additional Bitcoin Mining Units shipment tracking numbers were delivered by April 2, 2024.

### *AMW is an Alter Ego of Tyler Deboer*

124.    AMW is and at all relevant times was the alter ego of Tyler Deboer and Deboer is personally liable for AMW's debts under the veil piercing or alter ego theory.

125.    Upon information and belief, throughout the relevant period, Deboer controlled and dominated the affairs of AMW such that AMW was merely an alter-ego of Deboer. The two functioned as a single economic entity and this structure worked a fraud and injustice against Blockware.

126.    Upon information and belief, Deboer was AMW's entire management.

127.    Upon information and belief, Deboer regularly fails to observe business formalities with regard to his management and operation of AMW.

128.    Upon information and belief, Deboer used AMW to commit fraudulent and wrongful acts against Plaintiff and other members of the public.

129.    Upon information and belief, AMW was not adequately capitalized and did not have sufficient funds to cover its foreseeable liabilities, including those owed to Blockware, creating an unjust result for creditors.

130.    Upon information and belief, Deboer comingles the finances of his business entities, using the same for personal use and benefit.

131.    Upon information and belief, AMW did not directly received payments from clients to their own bank account.

132.    Upon information and belief, Deboer has been discussing ceasing AMW's operations.

133.    Upon information and belief, AMW no longer has an active website and AMW's previous ecommerce website, americanminingwarehouse.com, now redirects to a page asking the store owner to contact Shopify support to reactivate their store.

134.    Upon information and belief, Deboer completely dominates and controls AMW and uses the business entity to defraud his customers and hinder creditors, such as the Plaintiff herein.

### FIRST CLAIM FOR RELIEF

**Breach of Contract – November 15 Purchase Agreement against AMW**

135.    Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs 1-134 as though set forth here in their entirety.

136.    The November 15 Purchase Agreement is a valid and enforceable contract between Blockware and AMW.

137.    Blockware paid the purchase price due under the November 15 Purchase Agreement.

138.    Blockware has fully performed its obligations under the November 15 Purchase Agreement, including but not limited to any conditions precedent to AMW's performance.

139.    AMW has breached the November 15 Purchase Agreement by, *inter alia*, failing to deliver the November 15 Units by the delivery date required under the November 15 Purchase Agreement.

140.    Under New York law, in every contract, including without limitation the November 15 Purchase Agreement, there is an implied covenant of good faith and fair dealing.

141.    AMW was at all times bound to honor its implied covenant of good faith and fair dealing.

142.    AMW breached its implied covenant of good faith and fair dealing by, *inter alia*:

    a.    Failing to deliver any of the units by the delivery date required under the November 15 Purchase Agreement; and

    b.    Failing to act in good faith and use its best efforts to comply with the terms of the November 15 Purchase Agreement.

143.    As a direct and proximate cause of AMW's breach of contract and breach of the covenants of good faith and fair dealing, Blockware has suffered actual, incidental and consequential damages in an amount to be determined at trial.

144.    Upon information and belief, Blockware suffered consequential damages due to its lost profits caused by the delayed delivery of the November 15 Units in the amount to be determined at trial of not less than $100,000.

145.    As of March 31, 2024, Blockware has been damaged by AMW's breach of contract and breach of the covenant of good faith and fair dealing in the amount of not less than $100,000, plus additional damages that continue to accrue, including interest, costs, and attorneys' fees.

### SECOND CLAIM FOR RELIEF

**Breach of Contract – December 18 Purchase Agreement against AMW**

146.    Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs 1-134 as though set forth here in their entirety.

147.    The December 18 Purchase Agreement is a valid and enforceable contract between Blockware and AMW.

148.    Blockware paid the purchase price due under the December 18 Purchase Agreement.

149.    Blockware has fully performed its obligations under the December 18 Purchase Agreement, including but not limited to any conditions precedent to AMW's performance.

150.    AMW has breached the December 18 Purchase Agreement by, *inter alia*:

   a.    Failing to deliver any of the units by the delivery date required under the December 18 Purchase Agreement; and

   b.    Failing to deliver 747 of the units required under the December 18 Purchase Agreement.

151.    Under New York law, in every contract, including without limitation the December 18 Purchase Agreement, there is an implied covenant of good faith and fair dealing.

152.    AMW was at all times bound to honor its implied covenant of good faith and fair dealing.

153.    AMW breached its implied covenant of good faith and fair dealing by, *inter alia*:

   a.    Failing to deliver any of the units by the delivery date required under the December 18 Purchase Agreement;

   b.    Failing to deliver 747 of the units required under the December 18 Purchase Agreement; and

    c.   Failing to act in good faith and use its best efforts to comply with the terms of the December 18 Purchase Agreement.

154.    As a direct and proximate cause of AMW's breach of contract and breach of the covenants of good faith and fair dealing, Blockware has suffered actual, incidental and consequential damages in an amount to be determined at trial.

155.    Upon information and belief, as of March 31, 2024, Blockware suffered consequential damages due to its lost profits caused by the delayed delivery and absence of the December 18 Units in the amount of not less than $1,150,000.

156.    Blockware lost over $21,850,000 in business revenue, representing over $3,277,500 in additional lost profits, based on AMW's breach of the December 18 Purchase Agreement and breach of covenant of good faith and fair dealing.

157.    As of March 31, 2024, Blockware has been damaged by AMW's breach of contract and breach of the covenant of good faith and fair dealing in the amount of not less than $6,940,408, plus additional damages that continue to accrue, including interest, costs, and attorneys' fees.

## THIRD CLAIM FOR RELIEF

### Breach of Contract – December 21 Purchase Agreement against AMW

158.    Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs 1-134 as though set forth here in their entirety.

159.    The December 21 Purchase Agreement is a valid and enforceable contract between Blockware and AMW.

160.    Blockware paid the purchase price due under the December 21 Purchase Agreement.

161.    Blockware has fully performed its obligations under the December 21 Purchase Agreement, including but not limited to any conditions precedent to AMW's performance.

162.    AMW has breached the December 21 Purchase Agreement by, *inter alia*:

c.    Failing to deliver any of the units by the delivery date required under the December 21 Purchase Agreement; and

d.    Failing to deliver 600 of the units required under the December 21 Purchase Agreement.

163.    Under New York law, in every contract, including without limitation the December 21 Purchase Agreement, there is an implied covenant of good faith and fair dealing.

164.    AMW was at all times bound to honor its implied covenant of good faith and fair dealing.

165.    AMW breached its implied covenant of good faith and fair dealing by, *inter alia*:

a.    Failing to deliver any of the units by the delivery date required under the December 21 Purchase Agreement;

b.    Failing to deliver 600 of the units required under the December 21 Purchase Agreement; and

c.    Failing to act in good faith and use its best efforts to comply with the terms of the December 21 Purchase Agreement.

166.    As a direct and proximate cause of AMW's breach of contract and breach of the covenants of good faith and fair dealing, Blockware has suffered actual, incidental and consequential damages in an amount to be determined at trial.

167.    Upon information and belief, as of March 31, 2024, Blockware suffered consequential damages due to its lost profits caused by the delayed delivery and absence of the December 21 Units in the amount of not less than $1,163,000.

168.    In addition, due to AMW's breach of contract and breach of the covenants of good faith and fair dealing, Blockware was forced to spend over $1 million to fulfill its obligations to deliver these units in a timely manner to Blockware's clients. Blockware purchased 600 S19K PRO 120T units at $1,500 per unit for a total purchase price of $900,000 and an additional $108,000 in shipping charges to cover AMW's breach of contract.

169.    As of March 31, 2024, Blockware has been damaged by AMW's breach of contract and breach of the covenants of good faith and fair dealing in the amount of not less than $2,171,000, plus additional damages that continue to accrue, including interest, costs, and attorneys' fees.

**FOURTH CLAIM FOR RELIEF**

**Breach of Contract – December 30 Purchase Agreement against AMW**

170.    Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs 1-134 as though set forth here in their entirety.

171.    The December 30 Purchase Agreement is a valid and enforceable contract between Blockware and AMW.

172. Blockware paid the purchase price due under the December 30 Purchase Agreement.

173. Blockware has fully performed its obligations under the December 30 Purchase Agreement, including but not limited to any conditions precedent to AMW's performance.

174. AMW has breached the December 30 Purchase Agreement by, *inter alia*, failing to deliver any of the units by the delivery date required under the December 30 Purchase Agreement.

175. Under New York law, in every contract, including without limitation the December 30 Purchase Agreement, there is an implied covenant of good faith and fair dealing.

176. AMW was at all times bound to honor its implied covenant of good faith and fair dealing.

177. AMW breached its implied covenant of good faith and fair dealing by, *inter alia*:

    a. Failing to deliver any of the units by the delivery date required under the December 30 Purchase Agreement; and

    b. Failing to act in good faith and use its best efforts to comply with the terms of the December 30 Purchase Agreement.

178. As a direct and proximate cause of AMW's breach of contract and breach of the covenants of good faith and fair dealing, Blockware has suffered actual, incidental and consequential damages in an amount to be determined at trial.

179.    Upon information and belief, Blockware suffered consequential damages due to its lost profits caused by the delayed delivery of the December 30 Units in the amount of not less than $200,000.

180.    As of March 31, 2024, Blockware has been damaged by AMW's breach of contract and breach of the covenants of good faith and fair dealing in the amount of not less than $200,000, plus additional damages that continue to accrue, including interest, costs, and attorneys' fees.

**FIFTH CLAIM FOR RELIEF**

**Breach of Contract – January 8 Purchase Agreement against AMW**

181.    Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs 1-134 as though set forth here in their entirety.

182.    The January 8 Purchase Agreement is a valid and enforceable contract between Blockware and AMW.

183.    Blockware paid the purchase price due under the January 8 Purchase Agreement.

184.    Blockware has fully performed its obligations under the January 8 Purchase Agreement, including but not limited to any conditions precedent to AMW's performance.

185.    AMW has breached the January 8 Purchase Agreement by, *inter alia*:

a.    Failing to deliver any of the units by the delivery date required under the January 8 Purchase Agreement; and

b.    Failing to deliver 365 of the units required under the January 8 Purchase Agreement.

186.    Under New York law, in every contract, including without limitation the January 8 Purchase Agreement, there is an implied covenant of good faith and fair dealing.

187.    AMW was at all times bound to honor its implied covenant of good faith and fair dealing.

188.    AMW breached its implied covenant of good faith and fair dealing by, *inter alia*:

    a.    Failing to deliver any of the units by the delivery date required under the January 8 Purchase Agreement;

    b.    Failing to deliver 365 of the units required under the January 8 Purchase Agreement; and

    c.    Failing to act in good faith and use its best efforts to comply with the terms of the January 8 Purchase Agreement.

189.    As a direct and proximate cause of AMW's breach of contract and breach of the covenants of good faith and fair dealing, Blockware has suffered actual, incidental and consequential damages in an amount to be determined at trial.

190.    Upon information and belief, as of March 31, 2024, Blockware suffered consequential damages due to its lost profits caused by the delayed delivery and absence of the January 8 Units in the amount of not less than $247,000.

191.    As of March 31, 2024, Blockware has been damaged by AMW's breach of contract and breach of the covenants of good faith and fair dealing in the amount of not less than $768,000, plus additional damages that continue to accrue, including interest, costs, and attorneys' fees.

**SIXTH CLAIM FOR RELIEF**

**Breach of Contract – November 15 Purchase Agreement against Tyler Deboer**

**under Alter Ego Theory**

192.    Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs 1-134 as though set forth here in their entirety.

193.    The November 15 Purchase Agreement is a valid and enforceable contract between Blockware and AMW.

194.    Blockware paid the purchase price due under the November 15 Purchase Agreement.

195.    Blockware has fully performed its obligations under the November 15 Purchase Agreement, including but not limited to any conditions precedent to AMW's performance.

196.    AMW has breached the November 15 Purchase Agreement by, *inter alia*, failing to deliver the November 15 Units by the delivery date required under the November 15 Purchase Agreement.

197.    Under New York law, in every contract, including without limitation the November 15 Purchase Agreement, there is an implied covenant of good faith and fair dealing.

198.    AMW was at all times bound to honor its implied covenant of good faith and fair dealing.

199.    AMW breached its implied covenant of good faith and fair dealing by, *inter alia*:

a.  Failing to deliver any of the units by the delivery date required under the November 15 Purchase Agreement; and

b.  Failing to act in good faith and use its best efforts to comply with the terms of the November 15 Purchase Agreement.

200.    As a direct and proximate cause of AMW's breach of contract and breach of the covenants of good faith and fair dealing, Blockware has suffered actual, incidental and consequential damages in an amount to be determined at trial.

201.    Upon information and belief, Blockware suffered consequential damages due to its lost profits caused by the delayed delivery of the November 15 Units in the amount to be determined at trial of not less than $100,000.

202.    As of March 31, 2024, Blockware has been damaged by AMW's breach of contract in the amount of not less than $100,000, plus additional damages that continue to accrue, including interest, costs, and attorneys' fees.

203.    AMW was the alter ego of Deboer and therefore is liable for the moneys owed by AMW.

204.    Upon information and belief, throughout the relevant period, Deboer controlled and dominated the affairs of AMW, such that AMW was an alter-ego of Deboer.

205.    Upon information and belief, AMW is not adequately capitalized and did not have sufficient funds to cover its foreseeable liabilities, including those owed to Blockware, creating an unjust result for creditors.

206.    Upon information and belief, Deboer comingles his personal finances with his business entity, using the same for his own personal use and benefit.

207.    Upon information and belief, Deboer regularly transfers money and property out of his business entity, AMW, rendering it insolvent and undercapitalized.

208.    Upon information and belief, Deboer completely dominates and controls AMW and uses it to defraud his customers and hinder creditors, such as the plaintiff herein.

209.    Upon information and belief, Deboer regularly fails to observe business formalities regarding his management and operation of AMW.

210.    Upon information and belief, Deboer has used AMW as a vehicle to commit fraudulent and other wrongful acts against plaintiff and other members of the public.

211.    As such AMW is the alter ego of Tyler Deboer and he is personally liable for AMW's debt herein under a veil piercing or alter ego theory.

### SEVENTH CLAIM FOR RELIEF

**Breach of Contract – December 18 Purchase Agreement against Deboer under Alter Ego Theory**

212.    Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs 1-134 as though set forth here in their entirety.

213.    The December 18 Purchase Agreement is a valid and enforceable contract between Blockware and AMW.

214.    Blockware paid the purchase price due under the December 18 Purchase Agreement.

215.    Blockware has fully performed its obligations under the December 18 Purchase Agreement, including but not limited to any conditions precedent to AMW's performance.

216.    AMW has breached the December 18 Purchase Agreement by, *inter alia*:

   a.  Failing to deliver any of the units by the delivery date required under the December 18 Purchase Agreement; and

   b.  Failing to deliver 747 of the units required under the December 18 Purchase Agreement.

217.    Under New York law, in every contract, including without limitation the December 18 Purchase Agreement, there is an implied covenant of good faith and fair dealing.

218.    AMW was at all times bound to honor its implied covenant of good faith and fair dealing.

219.    AMW breached its implied covenant of good faith and fair dealing by, *inter alia*:

   a.  Failing to deliver any of the units by the delivery date required under the December 18 Purchase Agreement;

   b.  Failing to deliver 747 of the units required under the December 18 Purchase Agreement; and

   c.  Failing to act in good faith and use its best efforts to comply with the terms of the December 18 Purchase Agreement.

220.    As a direct and proximate cause of AMW's breach of contract and breach of the covenants of good faith and fair dealing, Blockware has suffered actual, incidental and consequential damages in an amount to be determined at trial.

221.    Upon information and belief, as of March 31, 2024, Blockware suffered consequential damages due to its lost profits caused by the delayed delivery and absence of the December 18 Units in the amount of not less than $1,150,000.

222.    Blockware lost over $21,850,000 in business revenue, representing over $3,277,500 in additional lost profits, based on AMW's breach of the December 18 Purchase Agreement and breach of covenant of good faith and fair dealing.

223.    As of March 31, 2023, Blockware has been damaged by AMW's breach of contract and breach of the covenant of good faith and fair dealing in the amount of not less than $6,940,408, plus additional damages that continue to accrue, including interest, costs, and attorneys' fees.

224.    AMW was the alter ego of Deboer and therefore is liable for the moneys owed by AMW.

225.    Upon information and belief, throughout the relevant period, Deboer controlled and dominated the affairs of AMW, such that AMW was an alter-ego of Deboer.

226.    Upon information and belief, AMW is not adequately capitalized and did not have sufficient funds to cover its foreseeable liabilities, including those owed to Blockware, creating an unjust result for creditors.

227.    Upon information and belief, Deboer comingles his personal finances with his business entity, using the same for his own personal use and benefit.

228.    Upon information and belief, Deboer regularly transfers money and property out of his business entity, AMW, rendering it insolvent and undercapitalized.

229.    Upon information and belief, Deboer completely dominates and controls AMW and uses it to defraud his customers and hinder creditors, such as the plaintiff herein.

230.    Upon information and belief, Deboer regularly fails to observe business formalities regarding his management and operation of AMW.

231.    Upon information and belief, Deboer has used AMW as a vehicle to commit fraudulent and other wrongful acts against plaintiff and other members of the public.

232.    As such AMW is the alter ego of Tyler Deboer and he is personally liable for AMW's debt herein under a veil piercing or alter ego theory.

## EIGHTH CLAIM FOR RELIEF

**Breach of Contract – December 21 Purchase Agreement against Deboer under Alter Ego Theory**

233.    Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs 1-134 as though set forth here in their entirety.

234.    The December 21 Purchase Agreement is a valid and enforceable contract between Blockware and AMW.

235.    Blockware paid the purchase price due under the December 21 Purchase Agreement.

236.    Blockware has fully performed its obligations under the December 21 Purchase Agreement, including but not limited to any conditions precedent to AMW's performance.

237.    AMW has breached the December 21 Purchase Agreement by, *inter alia*:

   a.    Failing to deliver any of the units by the delivery date required under the December 21 Purchase Agreement; and

   b.    Failing to deliver 600 of the units required under the December 21 Purchase Agreement.

238.    Under New York law, in every contract, including without limitation the December 21 Purchase Agreement, there is an implied covenant of good faith and fair dealing.

239.    AMW was at all times bound to honor its implied covenant of good faith and fair dealing.

240.    AMW breached its implied covenant of good faith and fair dealing by, *inter alia*:

   a.    Failing to deliver any of the units by the delivery date required under the December 21 Purchase Agreement;

   b.    Failing to deliver 600 of the units required under the December 21 Purchase Agreement; and

   c.    Failing to act in good faith and use its best efforts to comply with the terms of the December 21 Purchase Agreement.

241.    As a direct and proximate cause of AMW's breach of contract and breach of the covenants of good faith and fair dealing, Blockware has suffered actual, incidental and consequential damages in an amount to be determined at trial.

242.    Upon information and belief, as of March 31, 2024, Blockware suffered consequential damages due to its lost profits caused by the delayed delivery and absence of the December 21 Units in the amount of not less than $1,163,000.

243.    In addition, due to AMW's breach of contract and breach of the covenants of good faith and fair dealing, Blockware was forced to spend over $1 million to fulfill its obligations to deliver these units in a timely manner to Blockware's clients. Blockware purchased 600 S19K PRO 120T units at $1,500 per unit for a total purchase price of $900,000 and an additional $108,000 in shipping charges to cover AMW's breach of contract.

244.    As of March 31, 2024, Blockware has been damaged by AMW's breach of contract and breach of the covenants of good faith and fair dealing in the amount of not less than $2,171,000, plus additional damages that continue to accrue, including interest, costs, and attorneys' fees.

245.    AMW was the alter ego of Deboer and therefore is liable for the moneys owed by AMW.

246.    Upon information and belief, throughout the relevant period, Deboer controlled and dominated the affairs of AMW, such that AMW was an alter-ego of Deboer.

247.    Upon information and belief, AMW is not adequately capitalized and did not have sufficient funds to cover its foreseeable liabilities, including those owed to Blockware, creating an unjust result for creditors.

248.    Upon information and belief, Deboer comingles his personal finances with his business entity, using the same for his own personal use and benefit.

249.    Upon information and belief, Deboer regularly transfers money and property out of his business entity, AMW, rendering it insolvent and undercapitalized.

250.    Upon information and belief, Deboer completely dominates and controls AMW and uses it to defraud his customers and hinder creditors, such as the plaintiff herein.

251.    Upon information and belief, Deboer regularly fails to observe business formalities regarding his management and operation of AMW.

252.    Upon information and belief, Deboer has used AMW as a vehicle to commit fraudulent and other wrongful acts against plaintiff and other members of the public.

253.    As such AMW is the alter ego of Tyler Deboer and he is personally liable for AMW's debt herein under a veil piercing or alter ego theory.

**NINTH CLAIM FOR RELIEF**

**Breach of Contract – December 30 Purchase Agreement against Deboer under Alter Ego Theory**

254.    Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs 1-134 as though set forth here in their entirety.

255.    The December 30 Purchase Agreement is a valid and enforceable contract between Blockware and AMW.

256.    Blockware paid the purchase price due under the December 30 Purchase Agreement.

257.    Blockware has fully performed its obligations under the December 30 Purchase Agreement, including but not limited to any conditions precedent to AMW's performance.

258.    AMW has breached the December 30 Purchase Agreement by, *inter alia*, failing to deliver any of the units by the delivery date required under the December 30 Purchase Agreement.

259.    Under New York law, in every contract, including without limitation the December 30 Purchase Agreement, there is an implied covenant of good faith and fair dealing.

260.    AMW was at all times bound to honor its implied covenant of good faith and fair dealing.

261.    AMW breached its implied covenant of good faith and fair dealing by, *inter alia*:

    a.  Failing to deliver any of the units by the delivery date required under the December 30 Purchase Agreement; and

    b.  Failing to act in good faith and use its best efforts to comply with the terms of the December 30 Purchase Agreement.

262.    As a direct and proximate cause of AMW's breach of contract and breach of the covenants of good faith and fair dealing, Blockware has suffered actual, incidental and consequential damages in an amount to be determined at trial.

263.    Upon information and belief, Blockware suffered consequential damages due to its lost profits caused by the delayed delivery of the December 30 Units in the amount of not less than $200,000.

264.    As of March 31, 2024, Blockware has been damaged by AMW's breach of contract and breach of the covenants of good faith and fair dealing in the amount of not less than $200,000, plus additional damages that continue to accrue, including interest, costs, and attorneys' fees.

265.    AMW was the alter ego of Deboer and therefore is liable for the moneys owed by AMW.

266.    Upon information and belief, throughout the relevant period, Deboer controlled and dominated the affairs of AMW, such that AMW was an alter-ego of Deboer.

267.    Upon information and belief, AMW is not adequately capitalized and did not have sufficient funds to cover its foreseeable liabilities, including those owed to Blockware, creating an unjust result for creditors.

268.    Upon information and belief, Deboer comingles his personal finances with his business entity, using the same for his own personal use and benefit.

269.    Upon information and belief, Deboer regularly transfers money and property out of his business entity, AMW, rendering it insolvent and undercapitalized.

270.    Upon information and belief, Deboer completely dominates and controls AMW and uses it to defraud his customers and hinder creditors, such as the plaintiff herein.

271.    Upon information and belief, Deboer regularly fails to observe business formalities regarding his management and operation of AMW.

272.    Upon information and belief, Deboer has used AMW as a vehicle to commit fraudulent and other wrongful acts against plaintiff and other members of the public.

273.    As such AMW is the alter ego of Tyler Deboer and he is personally liable for AMW's debt herein under a veil piercing or alter ego theory.

## TENTH CLAIM FOR RELIEF

## Breach of Contract – January 8 Purchase Agreement against Deboer under Alter Ego Theory

274.    Plaintiff hereby incorporates the allegations set forth in the preceeding paragraphs 1-134 as though set forth here in their entirety.

275.    The January 8 Purchase Agreement is a valid and enforceable contract between Blockware and AMW.

276.    Blockware paid the purchase price due under the January 8 Purchase Agreement.

277.    Blockware has fully performed its obligations under the January 8 Purchase Agreement, including but not limited to any conditions precedent to AMW's performance.

278.    AMW has breached the January 8 Purchase Agreement by, *inter alia*:

a.   Failing to deliver any of the units by the delivery date required under the January 8 Purchase Agreement; and

b.   Failing to deliver 365 of the units required under the January 8 Purchase Agreement.

279.    Under New York law, in every contract, including without limitation the January 8 Purchase Agreement, there is an implied covenant of good faith and fair dealing.

280.    AMW was at all times bound to honor its implied covenant of good faith and fair dealing.

281.    AMW breached its implied covenant of good faith and fair dealing by, *inter alia*:

a.   Failing to deliver any of the units by the delivery date required under the January 8 Purchase Agreement;

b.   Failing to deliver 365 of the units required under the January 8 Purchase Agreement; and

c.   Failing to act in good faith and use its best efforts to comply with the terms of the January 8 Purchase Agreement.

282.    As a direct and proximate cause of AMW's breach of contract and breach of the covenants of good faith and fair dealing, Blockware has suffered actual, incidental and consequential damages in an amount to be determined at trial.

283.    Upon information and belief, as of March 31, 2024, Blockware suffered consequential damages due to its lost profits caused by the delayed delivery and absence of the January 8 Units in the amount of not less than $247,000.

284.    As of March 31, 2024, Blockware has been damaged by AMW's breach of contract and breach of the covenants of good faith and fair dealing in the amount of not less than $768,000, plus additional damages that continue to accrue, including interest, costs, and attorneys' fees.

285.    AMW was the alter ego of Deboer and therefore is liable for the moneys owed by AMW.

286.    Upon information and belief, throughout the relevant period, Deboer controlled and dominated the affairs of AMW, such that AMW was an alter-ego of Deboer.

287.    Upon information and belief, AMW is not adequately capitalized and did not have sufficient funds to cover its foreseeable liabilities, including those owed to Blockware, creating an unjust result for creditors.

288.    Upon information and belief, Deboer comingles his personal finances with his business entity, using the same for his own personal use and benefit.

289.    Upon information and belief, Deboer regularly transfers money and property out of his business entity, AMW, rendering it insolvent and undercapitalized.

290.    Upon information and belief, Deboer completely dominates and controls AMW and uses it to defraud his customers and hinder creditors, such as the plaintiff herein.

291.    Upon information and belief, Deboer regularly fails to observe business formalities regarding his management and operation of AMW.

292.    Upon information and belief, Deboer has used AMW as a vehicle to commit fraudulent and other wrongful acts against plaintiff and other members of the public.

293.    As such AMW is the alter ego of Tyler Deboer and he is personally liable for AMW's debt herein under a veil piercing or alter ego theory.

## ELEVENTH CLAIM FOR RELIEF

### Fraudulent Inducement

294.    Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs 1-293 as though set forth here in their entirety.

295.    Defendants materially misrepresented the dates by which the Bitcoin Mining Units would be delivered.

296.    Defendants knew that the delivery dates found within the contracts would not be met.

297.    Defendants repeatedly made false statements as to when the Bitcoin Mining Units would be delivered.

298.    Defendants knew that the statements made regarding when the Bitcoin Mining Units would be delivered were false.

299.    Defendants provided false information as to the delivery dates for the Bitcoin Mining Units in order to induce Plaintiff to order the Bitcoin Mining Units and not act sooner upon their breach of contract.

300.    AMW made the material representations to Blockware prior to the parties entering into the Purchase Agreements, in emails, in telephone, and text messages that AMW could guarantee delivery by the delivery dates set forth in the contract.

301.    These representations were false when made, and AMW knew of their falsity at the time they were made.

302.    AMW made these representations intending that Blockware would rely upon them and would agree to enter into the Purchase Agreements. AMW did so in order to secure the Purchase Agreements with Blockware.

303.    Plaintiff ordered the Bitcoin Mining Units in reliance upon the contractually promised delivery dates.

304.    Blockware justifiably relied on each of these affirmative representations in entering into the Purchase Agreements and paying the purchase price to AMW.

305.    Had Blockware known these representations were false, Blockware would not have entered into the Purchase Agreements and would not have paid any money to AMW.

306.    Plaintiff suffered damages as a result of their reliance on Defendants representations as to the delivery dates of the Bitcoin Mining Units.

307.    As a proximate result of AMW's fraudulent conduct, Blockware has suffered out-of-pocket damages in the amount of no less than $10,179,408.

### TWELFTH CLAIM FOR RELIEF

### Unjust Enrichment (in the alternative)

308.    Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs 1-134 as though set forth here in their entirety.

309.    Defendants requested and knowingly accepted $8,628,600.59 in payments for the 4,472 Bitcoin Mining Units purchased by Blockware but did not deliver 1,712 of the units.

310.    Defendants never acquired any of the 1,712 units to resell, transfer or deliver to Plaintiff in exchange for the payments totaling $3,908,618, which they received from Plaintiff for these undelivered units.

311.    Defendants kept the $3,908,618 in payments made by Plaintiff for the undelivered units.

312.    The $3,908,618 in payments made by Plaintiff to Defendants enriched and benefited Defendants although they performed no services nor rendered any benefit to Plaintiff.

313.    The $3,908,618 in payment made by Plaintiff to Defendants was and is a detriment and expense to Plaintiff.

314.    Defendants' retention of the $3,908,618 in payment made by Plaintiff was unjust, inequitable and unconscionable.

315.    Plaintiff pleads this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

## THIRTEENTH CLAIM FOR RELIEF

### Money Had and Received (in the alternative)

316.    Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs 1-134 as though set forth here in their entirety.

317.    Defendants have received money from Plaintiff in excess of the price of the Bitcoin Mining Units delivered.

318.    As the amount paid by Plaintiff exceeds the price of goods delivered, that excess is money that, in equity and good conscience, belongs to Plaintiff.

319.    Defendants have received $3,908,618, excluding all interest, cost, and attorneys' fees, that, in equity and good conscience, should be returned to Plaintiff.

320.    Plaintiff pleads this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Blockware Solutions, LLC respectfully requests that this Court enter judgment in its favor of plaintiff and grant plaintiff the following relief:

(a) For actual, compensatory, consequential, and incidental damages in excess of $10,179,408 in an amount to be determined at trial;

(b) All costs and expenses incurred in connection with this litigation, including attorneys' fees;

(c) Prejudgment and post judgment interest at the maximum amount allowed by law; and

(d) Such other and further relief as this Court deems just and proper.

<u>Jury Demand</u>

Plaintiff demands a trial by jury on all issues so triable.

Dated: Bronxville, New York
        April 2, 2024

*/s/ Timothy C. Bauman*
Timothy C. Bauman
SDNY Bar ID: TB2536

**BAUMAN LAW GROUP, P.C.**
141 Parkway Road, Suite 9
Bronxville, NY 10708
Tel:  (914) 337-1715
Fax:  (914) 361-4008
tbauman@baumanlawgroup.com

*Attorneys for Plaintiff Blockware Solutions, LLC.*