# EXHIBIT A

**KAGEN, CASPERSEN & BOGART PLLC**
ATTORNEYS ADMITTED IN NEW YORK, NEW JERSEY AND CALIFORNIA

750 THIRD AVENUE, 24TH FLOOR
NEW YORK, NEW YORK 10017
(212) 880-2045
(646) 304-7879 (FACSIMILE)

Timothy Bauman, Esq. (via email to tbauman@baumanlawgroup.com)
Bauman Law Group
141 Parkway Road, Ste. 9
Bronxville, New York 10708

  Re: *Blockware Solutions LLC v. American Mining Warehouse LLC et ano.*, 1:24-cv-02523

Dear Timothy:

  Pursuant to Section III.B.ii of Judge Torres's Individual Practices, I notify you that it appears that the Complaint in the above-captioned matter should be dismissed. That is so for the following reasons:

  <u>Lack of Personal Jurisdiction over Defendants With Regard to the December 18, December 21, December 30 and January 8 Transactions</u>: The Complaint fails state a basis to assert personal jurisdiction over either Defendant with regard to any of these transactions. Regarding these four transactions, American Mining Warehouse LLC ("AMW") is not a citizen of this State. Plaintiff Blockware Solutions, LLC ("Blockware") admits as much. *See* Compl. ¶ 12 (admitting AMW is citizen of Texas). AMW did not send any goods referred to in these transactions to the State of New York. AMW employs no personnel in this State. It has no offices in this State and owns no real property within this State. No AMW employee or officer came to this State at any time to conduct business regarding any of these transactions. Plaintiff Blockware Solutions LLC ("Blockware"), for its part, is not a citizen of this State either. It lists its primary address as being in Texas. It is organized under Delaware law. Blockware sent money to pay for these orders from States other than this State, and AMW received the money from Blockware in Texas. AMW does not regularly do business in the State of New York, and it did not reasonably expect any act about any of these four transactions to have consequences in this State. Indeed, the Complaint does not allege any consequence befalling Blockware *in this State* arising from any of these transactions. Blockware does not allege any other basis to assert jurisdiction over Defendant Deboer, and there is none. Mr. Deboer is a citizen of the State of Texas, as the Complaint admits. Compl. ¶ 14. Mr. Deboer does not regularly solicit business in this State. He does not derive substantial revenue from goods used or services rendered in this State. He owns no real property here. He too had no reason to expect any act in connection with any of these transactions to have consequences within this State.

  Accordingly, the Second, Third, Fourth Fifth, Seventh, Eighth, Ninth and Tenth claims should all be dismissed in their totality. The Eleventh, Twelfth and Thirteenth claims should be dismissed insofar as they relate to these four transactions as well.

  <u>Blockware Has No Standing to Sue for Any Claims</u>: Blockware admits that it is a limited liability company organized under Delaware law. Compl. ¶ 11. Accordingly, Blockware is a foreign limited liability company. Based on a review of records from the New York Department of State, it does not appear that Blockware has ever obtained a certificate of authority to do business in this State. Under N.Y. LLC Law § 808(a). "A foreign limited liability company doing business in this state without having received a certificate of authority to do business in this state may not maintain any action, suit or special proceeding in any court of this state unless and until such limited liability company shall have received a certificate of authority in this state."

It is apparent from the face of the Complaint that Blockware regularly and consistently conducts millions of dollars of business from the State of New York. Blockware's Chief Executive Officer negotiated and signed a contract for over $828,000 in New York over a period around November 15, 2023. Compl. ¶ 35. Blockware had the goods it paid for delivered to New York. *Id.* ¶ 43. Blockware's CEO then negotiated and signed a second contract for over $2.5 million in New York over a period of time around December 15, 2023. Compl. ¶ 45. Blockware's CEO then negotiated and signed an amendment to the second contract for over $336,000 in New York over a period around December 28, 2023. *Id.* ¶¶ 47-48. Blockware's CEO then negotiated and signed a third contract on December 21, 2023, in New York, around December 21, 2023. *Id.* ¶ 59.[1] This agreement was allegedly worth over $3.3 million. *Id.* ¶ 61. Blockware's CEO then negotiated a fourth contract, in New York, on December 30, 2023 for a period of time around December 30, 2023. *Id.* ¶ 68. This agreement was allegedly for goods worth slightly less than $1 million. *Id.* ¶ 71. Blockware's CEO then negotiated and signed a fifth contract on January 8, 2024, in New York, for a period around January 8, 2024. *Id.* ¶ 59. This agreement was for goods worth over $650,000. Compl. ¶ 81. This constant and heavy activity of doing business in this State for many millions of dollars makes it very clear that Blockware is "doing business in this state." It has, however, no certificate of authority. Therefore, this case must be dismissed. *G&G Closed Circuit Events, LLC v. Godinez*, 2023 U.S. Dist. Lexis 157305 (S.D.N.Y. Sept. 6, 2023) (so holding).

Blockware Has Not Pleaded Viable Alter Ego Claims against Deboer: "Courts in this Circuit look unfavorably upon conclusory pleadings" of alter ego status. *Long Island Ventures LLC v. Hempacco Co.*, 2023 U.S. Dist. Lexis 175750, at *22 (S.D.N.Y. Sept. 29, 2023). Courts are further reluctant to disregard a corporate entity. *Id*. at *23. Plaintiff Deboer is not personally liable under any of the alleged agreements. He was always alleged to be acting as an officer of AMW. Thus, to establish liability under alter ego claims, Blockware had to allege "sufficiently specific factual allegations," not mere recitations of conclusions, to show that Deboer disregarded AMW's form. *Id*. at *25-26. Blockware has failed to do this. There is *not a single well pleaded fact* showing any commingling between Deboer and AMW. Blockware's allegations have no facts whatsoever. *See, e.g.,* Compl. ¶¶ 203-11 (stating, in wholly conclusory fashion, with no facts, that Deboer "used AMW as a vehicle to commit fraudulent and other wrongful acts"). Consequently, the Sixth, Seventh, Eighth, Ninth and Tenth Claims should all be dismissed.

Blockware's Claims for Unjust Enrichment and Money Had and Received Should be Dismissed: When, as here, a valid written contract governs the subject matter in dispute, a plaintiff is not permitted to allege a claim of unjust enrichment. *Barbagallo v. Marcum LLP*, 820 F. Supp. 429, 443 (E.D.N.Y. 2011). "Moreover, an unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Amable v. New Sch.*, 551 F. Supp.3d 299, 318 (S.D.N.Y. 2021). That is the case here. Consequently, Blockware's Twelfth claim should be dismissed. Blockware's Thirteenth claim, for money had and received, should be dismissed for the same reason. *Id*. at 319-20.

Blockware's Claim for Fraudulent Inducement Should be Dismissed: Blockware's Eleventh Claim for fraudulent inducement should be dismissed for two independent grounds. *First*, "[a] fraud claim is not stated by allegations that simply duplicate, in the facts alleged and damages sought, a claim for breach of contract, enhanced only by conclusory allegations that the pleader's adversary made a promise while

---

[1] Although this paragraph appears to incorrectly refer to the November 15 transaction, I presume the intent was to refer to this agreement.

KAGEN, CASPERSEN & BOGART PLLC

May 22, 2024
Page 3

harboring the concealed intent not to perform it." *Student Advantage Fund I LLC v. Kennedy Lewis Mgmt. LP*, 2019 U.S. Dist. Lexis 199892, at *6 (S.D.N.Y. Nov. 18, 2019) *quoting Cronos Grp. Ltd. v. XComIP, LLC,* 156 A.D.3d 54, 62, 64 N.Y.S.3d 182 (1st Dep't 2017) (collecting cases). That is all Blockware's Eleventh claim does here. Blockware claims that Defendants made false statements in the course of performing (or failing to perform) the alleged agreements at hand. *E.g.*, Compl. ¶¶ 297-99. The Complaint alleges that AMW misrepresented the delivery dates of the Bitcoin Mining Units. *See id.* These alleged misrepresentations were made in the purchase agreements themselves. However, "a fraud claim 'can be predicated upon an insincere promise of future performance only where the alleged false promise is collateral to the contract the parties executed; if the promise concerned the performance of the contract itself, the fraud claim is subject to dismissal as duplicative.'" *Cronos Group*, 156 A.D.3d at 63. Blockware cannot turn its claims of contractual breach into fraud claims by this say-so.

*Second*, this claim is not pleaded with the particularity required by Fed. R. Civ. P. 9(b). Rule 9(b) requires Blockware to "state with particularity the circumstances constituting fraud or mistake." "In order to comply with Rule 9(b), the complaint *must* (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Gangemi v. Arch Oncology, Inc.*, 2023 U.S. Dist. Lexis 92876, at *5 (S.D.N.Y. May 26, 2023) (emphasis added). Blockware does none of this here. It does not allege who made the supposedly fraudulent statements. It does not allege when these statements were made. Nor does it explain, for any particularly challenged statement (as it lumps them all together), why any specific statement was fraudulent. This claim should be dismissed for this second independent reason.

<u>Blockware's First and Fourth Claims for Breach of Contract Should be Dismissed</u>: In each of these claims, Blockware does not allege that it failed to receive any of the goods it purchased. Blockware alleges only that shipments of these goods were made late. *See* Compl. ¶ 142 (so alleging for First claim); and ¶ 177 (so alleging for Fourth Claim). Blockware accepted the tendered performance. It accepted the late goods and did not reject them. The Uniform Commercial Code governs transactions for the sale of goods such as those alleged in these two claims. Under the U.C.C., when AMW tendered performance, Blockware "must within a reasonable time after [it] discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." U.C.C. § 2-607(3)(a).

Blockware does not allege that it ever gave such notice, much less within a reasonable time after it accepted the late goods. On the contrary: Blockware alleges that it asked about the late goods (Compl. ¶ 89), that it agreed to new timeliness for delivery (*id.* ¶ 93), and that AMW failed again to deliver in a timely manner. *But in the end*, Blockware accepted the allegedly late units from AMW relating to both of these orders. Blockware does *not* allege that it notified AMW of any breach with regard to these two agreements. Blockware did demand late orders with regard to other agreements (*e.g.* Compl. ¶ 123) but not with regard to these two agreements. Having accepted the tender and having failed to timely provide notice of breach, Blockware is now barred from suing under these two agreements. These two claims should be dismissed.

Sincerely,

Stuart Kagen