# EXHIBIT B



Timothy C. Bauman
tbauman@baumanlawgroup.com
(914) 337-1715

May 30, 2024

Stuart Kagen, Esq
750 Third Avenue, 24th Floor
New York, New York 10017

Re:   *Blockware Solutions LLC v. American Mining Warehouse LLC et al.*, 1:24-cv-02523

Dear Stuart:

Pursuant to Section III.B.ii of Judge Torres' Individual Practices, I write in response to your March 22, 2024 letter to inform you of the reasons and controlling authority that support the Complaint in the above captioned matter.

**The Court Has Personal Jurisdiction Over Both Defendants.** *First*, "there is no requirement under the Federal Rules of Civil Procedure that a complaint allege facts showing the basis for personal jurisdiction." *Hypefortype Ltd. v. Universal Music Grp., Inc.*, No. 17-CV-4468 (BMC), 2017 WL 11537717, at *1 (E.D.N.Y. Sept. 17, 2017). Instead, "a plaintiff can solely rely on factual assertions supporting jurisdiction as demonstrated by proof submitted in opposition to a motion to dismiss." *Id.* at *2. *Second*, CPLR § 302(a)(1) "is a '**single act statute**' and **proof of one transaction** in New York is sufficient to invoke jurisdiction." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 522 N.E.2d 40, 43 (1988) (citations omitted) (emphasis added); *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 323 n.4, 68 N.E.3d 1, 7 (2016) ("proof of one transaction in New York is sufficient to invoke jurisdiction"). Defendants have clearly transacted business in New York, including by marketing, promoting and offering cryptocurrency miners to consumers in New York,[1] projecting themselves into New York via calls, emails, and the like, contracting to supply goods in New York, and by shipping miners to New York, thereby satisfying CPLR § 302(a)(1). *See, e.g.*, *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010). Blockware and AMW have an established, continuing, and substantial business relationship, and Defendants were aware of Blockware's strong connections to New York. As alleged in the Complaint, and contrary to your letter, Blockware is a

---

[1] In addition to contracting for delivery of the miners to anywhere in the lower 48 states, including New York, American Mining Warehouse LLC offered to sell miners to customers in New York on their website, and continues to do so. *Nat'l Football League v. Miller*, No. 99 CIV. 11846 JSM, 2000 WL 335566, at *1 (S.D.N.Y. Mar. 30, 2000) (citation omitted) ("one who uses a web site to make sales to customers in a distant state can thereby become subject to the jurisdiction of that state's courts"); *Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 542 (S.D.N.Y. 2015) (citations omitted) ("A defendant's operation of a 'highly interactive' website that offers merchandise for sale to consumers in New York and shipment of such merchandise to there 'sufficiently demonstrate[s] [the defendant's] purposeful availment of the benefits of transacting business in New York.'").



citizen of New York.[2] As Mr. Deboer well knows, Mr. Jappa was located in New York and negotiating the contracts from New York. Mr. Deboer directed his emails and phone calls to Mr. Jappa in New York. Each Purchase Agreement agreed to ship goods to the buyer's requested location in the lower 48 states, including New York. AMW hosts a website which invites and solicits business in New York and agrees to ship miners to buyers in the U.S. demonstrating a "reasonably probability" that it has been used to effect commercial transactions with customers in New York.[3] *Finally*, Mr. Deboer is also subject to jurisdiction in New York. *See Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 323–24 (S.D.N.Y. 1998) (Sotomayor, J.) ( "an out-of-state corporate officer who has not personally transacted business in New York, can still be subject to personal jurisdiction under § 302(a)(1) of New York's long-arm statute, if it can be shown that the corporation transacted business in New York as the officer's agent"). The alter ego theory also provides a basis for jurisdiction over Mr. Deboer. *See, e.g.*, *Clingerman v. Ali*, 212 A.D.3d 572 (1st Dep't 2023) (where individual was extensively involved with entity operations and dominated and controlled entities, court properly found jurisdiction over individuals based on an alter ego theory).

**Blockware Is Applying for a Certificate of Authority to Do Business in The State.** Blockware has complied with Limited Liability Company Law § 808(a) since filing suit by applying for authority to do business in the state of New York. Further, failure to obtain authorization before filing suit is not a fatal jurisdictional defect. *See Basile v. Mulholland*, 73 A.D.3d 597, 899 N.Y.S.2d 851 (1st Dep't 2010) ("plaintiff LLC's failure to obtain a certificate of authority to do business in New York before initiating the action is not a fatal jurisdictional defect and such certificate has since been obtained"). As Blockware has taken steps to cure this alleged deficiency, it has standing to bring this action in New York.

**Blockware Has Adequately Alleged that Tyler Deboer is an Alter Ego of AMW.** Blockware has adequately alleged that Mr. Deboer is an alter ego of AMW. *See* Complaint ¶¶ 124-134, 192-293. Furthermore, the allegations are not simply conclusory and there are many more facts to support each allegation in the Complaint, including that Mr. Deboer has attempted to use his position as an officer of AMW to help his oil and gas business obtain $9.5-$12 million in financing,[4] and that AMW does

---

[2] Your letter also inaccurately states that AMW received funds from Blockware in Texas. Per the Purchase Agreements, payment for each of the transactions was sent to Whitley LLP Attorneys at Law Trust Account (IOLTA) in San Francisco, California. Payments were never sent directly to AMW or to Texas.

[3] *Campbell v. Gallery Model Homes, Inc.*, 22 Civ. 9947 (AT) 2024 WL 1076541 (SDNY March 12, 2024) (Torres, J.) ("Here, Hunt attests that Gallery provides shipping "to anyone in the United States" and does not contest Campbell's allegation that the company conducts business with New York state residents . . . Accordingly, there is at least 'a reasonable probability' that the Website 'has been actually used to effect commercial transactions with customers in New York,' satisfying the first requirement of New York's long-arm statute.") (citations omitted)

[4] *See*, April 9, 2024 Email from S. Whitley ("Mr. Deboer has an oil asset that he can leverage to acquire the money to place the order and get the machines delivered . . . . he is willing to do it if Mr. Jappa will help Mr. Deboer out by using his network to bring forth a party to lend some expansion money to Mr. Deboer's oil and gas company to expand their portfolio and pick up some energy assets that Mr. Deboer has identified. The estimated amount is $9.5-$12M, depending on the lender's wherewithal. If Mr. Jappa has a party in his network who will provide this loan, then Mr. Deboer will leverage the asset to obtain the funds to acquire the missing miners and resolve this headache. . . . In addition, Mr. Deboer will lend AMW $300,000, which AMW will then use to pay Blockware for its legal fees and cover Blockware's other damages. We believe that this proposed solution will help AMW, Mr. Deboer and Blockware and get Blockware the machines that it wants, provided that Mr. Jappa is able to help Mr. Deboer's oil and gas company obtain the needed financing."); *See also*, April 11, 2024 Email from T. Deboer ("***The asset I said I can leverage is a***



not have the funds needed to correct their breach of contract without Mr. Deboer using his outside assets.[5] In this regard, it is apparent that AMW is undercapitalized and engages in comingling.

**Blockware's Claims for Unjust Enrichment and Money Had and Received.** Blockware's claims for unjust enrichment and money had and received were pled in the alternative. If Defendants are now conceding that there is no dispute over the existence of a valid contract for each transaction that covers the alleged damages, we will consider dismissing these claims as to AMW. However, they are not duplicative as to Mr. Deboer, who is not a party to the contracts, and will not be dismissed. *See,* May 22 Letter ("When, as here, a valid written contract governs the subject matter in dispute…").

**Blockware's Claims for Fraudulent Inducement.** Blockware alleged that Mr. Deboer and AMW falsely induced Blockware to enter the contracts by providing false information as to the existence of Bitcoin Mining Units and their availability for shipment. These misrepresentations of present fact induced Blockware into believing that the Bitcoin Mining Units would be delivered by a date certain. *See VTech Holdings Ltd. v. Lucent Techs., Inc.*, 172 F. Supp. 2d 435, 440 (S.D.N.Y. 2001). Curiously, upon receiving a demand letter from Blockware's counsel in regard to this matter, Mr. Deboer proceeded to destroy the Telegram messages between him and the principal of Blockware containing these representations. Mr. Deboer's destruction of evidence in anticipation of litigation underscores his fraudulent intent. However, to avoid unnecessary motion practice and promote efficiency, Blockware is willing to dismiss these claims rather than amend its Complaint as recommended by the Judge's Rule III.B.ii.

**Blockware's First and Fourth Claims Are Adequately Alleged.** Blockware adequately alleged breach of contract by failure to deliver the miners by the contracted date and is entitled to damages stemming from this delay. *See, e.g., Jamuna Fashion Wears Ltd. v. Micom Trading Corp.*, No. 09CIV5339BSJMHD, 2012 WL 13140780, at *5 (S.D.N.Y. Dec. 28, 2012) (where acceptance was made, damages stemming from delay were compensable). Further, Blockware provided notice of the breach in the demand letters alleged in the Complaint.

                                                                                 Yours truly,

                                                                                 Timothy Bauman

---

*huge asset in my oil and gas company's portfolio*… I know you have a big network, and likely have some people who could facilitate a loan to my O&G company as a piece of this plan.")

[5] *See* April 10, 2024 Email from Tyler Deboer to S. Whitley ("I am saying I am willing to leverage my Reeves County asset to get the funds to lend to AMW to buy replacement machines for Blockware, but if I am going to put that on the line for this then I wanted to have their assistance in getting the funds for the Lee Co assets. Trying to work together for something like Mason mentioned. That was the whole idea.").