

Timothy C. Bauman
tbauman@baumanlawgroup.com
(914) 337-1715

June 12, 2024

**BY EMAIL AND ECF**
Hon. Analisa Torres, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007
Torres_NYSDChambers@nysd.courts.gov

Re:   *Blockware Solutions LLC v. American Mining Warehouse LLC et al.*, Case No. 1:24-cv-02523-AT (S.D.N.Y)

Dear Judge Torres:

Pursuant to Sections III.A and III.B.ii of this Court's Individual Practices, Plaintiff Blockware Solutions LLC ("Blockware") respectfully responds to Defendants American Mining Warehouse LLC ("AMW") and Tyler Deboer's ("Deboer" collectively with AMW "Defendants") letter (No. 21) ("Letter") setting forth the grounds on which they intend to move to dismiss Blockware's Complaint (No. 1) ("Complaint"). Defendants' Letter makes clear that they intend to ask the Court to draw inferences in their favor, ignore the Complaint's allegations, and improperly weigh evidence on a motion to dismiss. As set forth below, the proposed bases for Defendants' anticipated motion are without merit. The Complaint does not fail as a matter of law because (1) Blockware has standing to sue; (2) the Court has jurisdiction over both Defendants; (3) Blockware's claims for unjust enrichment and money had and received were pled in the alternative and are not duplicative; and  (4) Blockware has adequately pled the claims Defendants challenge. For these and other reasons, Blockware intends to oppose Defendants' anticipated motion to dismiss.

  **A.** **Blockware Has Standing to Sue.**

Blockware has a certificate of authority to do business in New York.[1] Blockware's "failure to obtain a certificate of authority to do business in New York before initiating the action is not a fatal jurisdictional defect and such certificate has since been obtained." *See Basile v. Mulholland*, 73 A.D.3d 597, 899 N.Y.S.2d 851 (1st Dep't 2010).[2]

  **B.** **The Court Has Personal Jurisdiction Over Both Defendants.**

*First*, "there is no requirement under the Federal Rules of Civil Procedure that a complaint allege facts showing the basis for personal jurisdiction." *Hypefortype Ltd. v. Universal Music Grp., Inc.*, No. 17-CV-4468 (BMC), 2017 WL 11537717, at *1 (E.D.N.Y. Sept. 17, 2017). Instead, "a plaintiff can solely rely on factual assertions supporting jurisdiction as demonstrated by proof

---

[1] Defendants were notified as part of the letter exchange that Blockware had applied for a certificate of authority to do business in New York, a fact which Defendants appear to ignore in their letter to the Court.
[2] We note that *G&G Closed Circuit Events, LLC v Godinez*, 2023 U.S. Dist. Lexis 157305, at *1-2 (S.D.N.Y. Sep. 6, 2023) to which Defendants cite was vacated by the Court's own order on March 19, 2024. There is no authority to support Defendants' request for dismissal in this regard. *See G&G Closed Circuit Events, LLC v Godinez*, No. 7:23-cv-03868, No. 41 (S.D.N.Y March 19, 2024).



submitted in opposition to a motion to dismiss." *Id.* at *2.

*Second*, CPLR § 302(a)(1) "is a '*single act statute*' and *proof of one transaction* in New York is sufficient to invoke jurisdiction." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 522 N.E.2d 40, 43 (1988) (citations omitted) (emphasis added); *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 323 n.4, 68 N.E.3d 1, 7 (2016) ("proof of one transaction in New York is sufficient to invoke jurisdiction"); *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71, 850 N.E.2d 1140, 1142–43 (2006) ("a sophisticated institutional trader knowingly entering our state—whether electronically or otherwise—to negotiate and conclude a substantial transaction is within the embrace of the New York long-arm statute."). Defendants have indisputably contracted to supply goods in New York. In addition, Defendants have clearly transacted business in New York, including by marketing, promoting and offering cryptocurrency miners to consumers in New York,[3] projecting themselves into New York via calls, emails, and the like, maintaining a fully interactive website through which they do business in New York,[4] and by shipping miners to New York, thereby satisfying CPLR § 302(a)(1). *See, e.g., Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 169–72 (2d Cir. 2010); *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380–84, 880 N.E.2d 22, 29 (2007); *Golden Archer Invs., LLC v. Skynet Fin. Sys.*, No. 11 CIV. 3673 RJS, 2012 WL 123989, at *4 (S.D.N.Y. Jan. 3, 2012) ("When a defendant's remote communications effectuate some purposeful business in New York, personal jurisdiction will be found."). Blockware and AMW have an established, continuing, and substantial business relationship, and Defendants were aware of Blockware's strong connections to New York.[5] As alleged in the Complaint, Blockware is a citizen of New York. Mr. Jappa negotiated the contracts from New York. Deboer directed his emails and phone calls to Mr. Jappa in New York. Each Purchase Agreement agreed to ship goods to the buyer's requested location in the lower 48 states, including New York. After the November 15th Agreement Defendants knew the miners, including outstanding undelivered miners, could be delivered to New York.[6]

*Finally*, Deboer is also subject to jurisdiction in New York as an agent. *See Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 323–24 (S.D.N.Y. 1998) ("an out-of-state corporate officer who has not personally transacted business in New York, can still be subject to personal jurisdiction under §

---

[3] In addition to contracting for delivery of the miners to anywhere in the lower 48 states, including New York, AMW offered to sell miners to customers in New York on their website, providing further support this Court's exercise of jurisdiction over Defendants. *See, e.g., Nat'l Football League v. Miller*, No. 99 CIV. 11846 JSM, 2000 WL 335566, at *1 (S.D.N.Y. Mar. 30, 2000) (citation omitted) ("one who uses a web site to make sales to customers in a distant state can thereby become subject to the jurisdiction of that state's courts"); *Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 542 (S.D.N.Y. 2015) (citations omitted) ("A defendant's operation of a 'highly interactive' website that offers merchandise for sale to consumers in New York and shipment of such merchandise to there 'sufficiently demonstrate[s] [the defendant's] purposeful availment of the benefits of transacting business in New York.'").

[4] *See, e.g., Campbell v. Gallery Model Homes, Inc.*, 22 Civ. 9947 (AT) 2024 WL 1076541 (SDNY March 12, 2024) (Torres, J.) ("Here, Hunt attests that Gallery provides shipping "to anyone in the United States" and does not contest Campbell's allegation that the company conducts business with New York state residents . . . Accordingly, there is at least 'a reasonable probability' that the Website 'has been actually used to effect commercial transactions with customers in New York,' satisfying the first requirement of New York's long-arm statute.") (citations omitted)

[5] *See, e.g., State v. Vayu, Inc.*, 39 N.Y.3d 330, 334, 206 N.E.3d 1236, 1239–40 (2023) (citations omitted) ("For two years, Vayu projected itself into the State via calls and emails with Small and others at SUNY Stony Brook that resulted in the sale of two UAVs. The content of the communications here show that Vayu purposefully sought to establish a substantial ongoing business relationship with SUNY Stony Brook.")

[6] Defendants ask the Court to draw inferences in their favor that no miners were ordered for this State but point to nothing in the Complaint stating this. In doing so, Defendants plainly and conveniently ignore that the units contracted for in the November 15th Agreement were, in fact, delivered to New York, belatedly. *See* Complaint ¶ 43.



302(a)(1) of New York's long-arm statute, if it can be shown that the corporation transacted business in New York as the officer's agent"). The alter ego theory provides a separate basis for jurisdiction over Deboer. *See, e.g., Clingerman v. Ali*, 212 A.D.3d 572 (1st Dep't 2023) (where individual was extensively involved with entity operations and dominated and controlled entities, court properly found jurisdiction over individuals based on an alter ego theory). In the event the Court has any doubt on the record before it, the Court should grant the Plaintiff leave to perform jurisdictional discovery.

### C. The Complaint Adequately Pleads Alter Ego Claims Against Deboer.

Blockware has adequately alleged that Deboer is an alter ego of AMW with more than conclusory allegations. For example, Blockware has alleged that: (i) Deboer is AMW's entire management (Complaint ¶ 126); (ii) Deboer is the sole member and managing member of AMW (Id. ¶ 12-13); (iii) AMW and Deboer regularly fail to observe business formalities with regard to management and operation of AMW (Id. ¶¶ 20, 127); (iv) AMW did not directly receive payments from clients into its own bank account (Id. ¶ 131)[7]; (v) Deboer comingles his personal finances with his business entity, using the same for his own personal use and benefit (Id. ¶ 17); (vi) Deboer regularly transfers money and property out of his business entity rendering it insolvent and undercapitalized (Id. ¶ 18);(vii) Deboer has been discussing ceasing AMW's operations (Id. ¶ 119); (viii) AMW was not adequately capitalized and did not have sufficient funds to cover its foreseeable liabilities, including those owed to Blockware (Id. ¶ 129); (ix) upon filing this suit AMW no longer had an active website and their previous e-commerce website redirected to a page asking the store owner to contact Shopify support to reactivate the store (Id. ¶ 120).[8]

We alerted Defendants as part of the letter exchange that there are many additional facts to support each allegation in the Complaint, which will be bolstered by discovery, including that Deboer has attempted to use his position as an officer of AMW to help his oil and gas business obtain $9.5-$12 million in financing,[9] and that AMW does not have the funds needed to correct its breach of contract without Deboer using his outside assets.[10] In this regard, it is apparent that AMW is undercapitalized and engages in comingling. We dispute Defendants' contention that the emails referred to in our previous letter are confidential settlement communications that cannot be relied upon. *See, e.g., Lakah v. UBS AG*, No. 07-CV-2799 (LAP), 2017 WL 7245365, at *9 (S.D.N.Y. Feb. 14, 2017) (finding evidence from settlement negotiations admissible to "bolster [plaintiffs'] veil piercing argument"); *McAllister Olivarius v. Mermel*, 298 F. Supp. 3d 661, 674 n.4 (S.D.N.Y. 2018) (*quoting* Fed. R. Evid 408) (letter marked "for settlement purposes only" was "admissible because it [wa]s not being admitted to 'prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction.'"). We also note that the communications were

---

[7] This is further supported by the Purchase Agreements requiring that payments be made to a trust account maintained by AMW's counsel, Whitley LLP Attorneys at Law, which is alleged in the Complaint. (Id. ¶¶ 37, 45, 49, 61, 71).

[8] Further, "New York courts have recognized that a veil-piercing theory often necessitates a 'fact laden inquiry' and thus is 'unsuited for resolution on a pre-answer, pre-discovery motion to dismiss.'" *City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776, 799 (S.D.N.Y. 2017) (citations omitted).

[9] *See*, April 9, 2024 Email from S. Whitley ("Mr. Deboer has an oil asset that he can leverage to acquire the money to place the order and get the machines delivered . . . he is willing to do it if Mr. Jappa will help Mr. Deboer out by using his network to bring forth a party to lend some expansion money to Mr. Deboer's oil and gas company . . . . The estimated amount is $9.5-$12M . . ."); *See also*, April 11, 2024 Email from T. Deboer ("*The asset I said I can leverage is a huge asset in my oil and gas company's portfolio*... I know you have a big network, and likely have some people who could facilitate a loan to my O&G company. . . .")

[10] *See* April 10, 2024 Email from Tyler Deboer to S. Whitley ("I am willing to leverage my Reeves County asset to get the funds to lend to AMW to buy replacement machines for Blockware . . .").



not referenced in the record until Defendants admitted the parties' previously exchanged letters, which were *not* to be submitted to the Court under Section III.B.ii of this Court's Individual Practices.

### D. Blockware's Claims for Unjust Enrichment and Money Had and Received Were Pled in the Alternative and Are Not Duplicative

Blockware's claims for unjust enrichment and money had and received were pled in the alternative. They are not duplicative if Defendants do not concede that there is no dispute over the existence of a valid contract for each transaction *and* that the contract covers the alleged damages, something Defendants contest in their own letter. Stipulating that the contracts are valid is not enough. *See, e.g., In re Baumann & Sons Buses, Inc.*, No. 20-08195, 2022 WL 38294, at *12 (Bankr. E.D.N.Y. Jan. 4, 2022) (citations omitted) (where "[t]he parties dispute whether the contract covers the circumstances presented by the facts of th[e] case," equitable claims are not duplicative of breach of contract claims). Further, the contracts are not duplicative as to Deboer because he is not a party.

### E. Blockware's Claims for Fraudulent Inducement Are Adequately Alleged

Blockware alleged that Deboer and AMW falsely induced Blockware to enter into the contracts by providing false information as to the existence of Bitcoin Mining Units and their availability for shipment. These misrepresentations of present fact induced Blockware into believing that the Bitcoin Mining Units would be delivered by a date certain. *See VTech Holdings Ltd. v. Lucent Techs., Inc.*, 172 F. Supp. 2d 435, 440 (S.D.N.Y. 2001). Curiously, upon receiving a demand letter from Blockware's counsel regarding this matter, Deboer proceeded to destroy the Telegram messages between him and the principal of Blockware containing these representations. Deboer's destruction of evidence in anticipation of litigation underscores his fraudulent intent.

Defendants have repeatedly thwarted and delayed Blockware's efforts to resolve this dispute. For instance, Defendants filed a preemptive declaratory judgment action in Texas state court, which they promptly voluntarily dismissed, all but conceding the declaratory judgment action was a mere tactic. *See American Mining Warehouse LLC v. Blockware Solutions LLC*, 4:24-cv-01630, No. 6 (S.D. Tex. May 16, 2024). In an attempt to keep things moving swiftly and avoid further unnecessary motion practice or delays, Blockware informed Defendants they would be willing to dismiss the fraud claims. When it became clear this would not resolve Defendants' intention to move to dismiss and the case would be delayed regardless Blockware informed Defendants that it was not willing to do so.

### F. Blockware's First and Fourth Claims for Breach of Contract Are Adequately Alleged

Blockware adequately alleged breach of contract by failure to deliver the miners by the contracted date and is entitled to damages stemming from this delay. *See, e.g., Jamuna Fashion Wears Ltd. v. Micom Trading Corp.*, No. 09CIV5339BSJMHD, 2012 WL 13140780, at *5 (S.D.N.Y. Dec. 28, 2012) (where acceptance was made, damages stemming from delay were compensable); *Hangzhou Silk Imp. & Exp. Corp. v. P.C.B. Int'l Indus., Inc.*, No. 00 CIV. 6344 (RLC), 2002 WL 2031591, at *3 (S.D.N.Y. Sept. 5, 2002) (repeated correspondence and course of dealing proved timely notification). Further, Blockware provided notice of the breach in the demand letters alleged in the Complaint and contrary to Defendants' letter, the Complaint does not state that Blockware agreed to new deadlines for delivery.

Yours truly,

Timothy Bauman